## Norfolk
### GREGORY STEVEN HINES
v.
### COMMONWEALTH OF VIRGINIA
No. 2424-92-1
Decided November 15, 1994

COUNSEL

George B. Pavek, III, for appellant.

Marla Lynn Graff, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

BENTON, J.—At a trial in which his statement to the police was used as evidence against him, Gregory Steven Hines was convicted of two armed robberies and use of a firearm during the commission of both robberies. Hines contends that (1) his statement should have been suppressed because it was obtained from him in violation of the Fifth Amendment to the Constitution, and (2) the evidence was insufficient to support the convictions. We hold that the trial judge erred in denying Hines's suppression motion.

## I.

The evidence proved that Hines was in custody in the Hampton jail when Detective Kenneth Seals of the Hampton Police Department brought Hines to police headquarters to question him concerning a criminal offense that occurred in the City of Hampton. Detective Brian Daniels of the Newport News Police Department was also present because he wanted to question Hines concerning two robberies that occurred two months earlier in the City of Newport News.

When Detective Seals began questioning Hines, Hines became aggravated and said he wanted to return to his jail cell and speak to his attorney. Detective Seals testified that he then said to Hines, "All I wanted to know is whether you're going to be a witness or a defendant in th[e] matter." Hines responded by questioning what the detective meant by "witness." Detective Seals and Hines then continued the discussion. During the ensuing discussion Hines made inculpatory statements regarding the Hampton incidents for which he was charged. When Detective Seals concluded his interview, he left the room.

Detective Daniels testified that he remained in the room with Hines after Detective Seals left. Because he was present when Detective Seals gave Hines *Miranda* warnings, Detective Daniels asked Hines whether Hines understood those rights. When Hines responded in the affirmative, Detective Daniels began to interview Hines concerning the Newport News robberies. During that interview Hines made incriminating statements.

Prior to trial in Newport News, Hines made a motion to suppress the statements he made to Detective Daniels. The trial judge ruled that Hines initiated the further discussion and denied Hines's motion to suppress the evidence.

## II.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that when an accused who is in custody makes a request for assistance of counsel, "the interrogation *must cease until an attorney is present*." *Id.* at 474 (emphasis added). That request was deemed to be a significant event protected by the Fifth Amendment to the Constitution of the United States. *Id.* In applying this principle in a later case, the Court explained "that an

accused . . . , having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversation with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). To reconfirm and lend substance to these Fifth Amendment rights, the Court "emphasize[d] that it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." *Id.* at 485.

The *Edwards* rule provides a "relatively rigid requirement" that police and prosecutors must observe. *Fare v. Michael C.*, 442 U.S. 707, 718 (1979). "[T]he rigid rule [was fashioned to announce] that an accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease." *Id.* at 719. Thus, the rule in "*Edwards* focuses on the state of mind of the suspect and not of the police." *Arizona v. Roberson*, 486 U.S. 675, 687 (1988).

The evidence in this case proved that Hines was in custody when he was taken from the jail to police headquarters for interrogation. He was placed in a room with two officers who wanted to interrogate him regarding several offenses. When he became aggravated at the prospect of an interrogation, he asked to be returned to jail and invoked the right to consult with his lawyer. He made a specific and unambiguous request to consult with his lawyer.

By asking Hines "whether [he was] going to be a witness or a defendant in th[e] matter," the officer continued the conversation that he was bound to cease. This inquiry was a reinitiation of the dialogue that Hines sought to terminate. Furthermore, the inquiry contained the suggestion that unless Hines continued the dialogue he would be charged as a defendant and not considered a mere witness. Thus, the ensuing "communication, exchanges, or conversation with the police," *Edwards*, 451 U.S. at 485, was initiated by the police officer's further inquiry to Hines. Once Hines invoked his right to confer with his counsel, "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards*, 451 U.S. at 484 (footnote omitted).

■ Furthermore, the officer's continued inquiry was interrogation. It was specifically directed to Hines and questioned his level of involvement in the crime. "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (footnote omitted).

■ The Supreme Court has been unwavering in holding that "denial of a defendant's request for his attorney . . . undermine[s] his ability to exercise the privilege—to remain silent if he chose or to speak [with his counsel] without any intimidation, blatant or subtle." *Miranda*, 384 U.S. at 466. When the officer continued the dialogue without first giving Hines access to his lawyer, the statements that he elicited did not follow upon a valid waiver of Hines's Fifth Amendment rights. "[I]t is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' [of custodial interrogation] and not the purely voluntary choice of the suspect." *Roberson*, 486 U.S. at 681. Accordingly, we conclude that the trial judge erred in admitting the statement.

## III.

Because the evidence at trial included testimony of witnesses whose credibility must be subject to the determination of the trier of fact, *see Russo v. Commonwealth*, 207 Va. 251, 252, 148 S.E.2d 820, 822 (1966), *cert. denied*, 386 U.S. 909 (1967), we cannot say that the evidence was insufficient as a matter of law to support a conviction. Accordingly, the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Willis, J., and Bray, J., concurred.